# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT E. LEE SUPINGER, JR., *Plaintiff,* | CASE NO. 6:15-cv-00017 |
| v. | MEMORANDUM OPINION |
| COMMONWEALTH OF VIRGINIA, *ET AL.*, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's motion for partial summary judgment (docket no. 94).

Plaintiff seeks summary judgment on his due process claim under 42 U.S.C. § 1983 against Defendants Richard Holcomb, Joseph Hill, Jeannie Thorpe, and Tom Penny.[1] As explained below, Plaintiff's motion will be granted in part and denied in part.

## I. PROCEDURAL HISTORY

Supinger instituted this action in the Lynchburg City Circuit Court, and the Defendants removed to this Court. In his original complaint, Supinger alleged various claims against multiple defendants. On March 2, 2016, I dismissed several of Supinger's claims, but allowed his claim of deprivation of procedural due process, among others, to go forward. *See* Docket No. 82.

On April 4, 2016, Supinger filed a motion for leave to file a second amended complaint. *See* Docket No. 91. Magistrate Judge Robert Ballou entered a report and recommendation recommending that I grant the motion in part and deny the motion in part. I adopted Judge

---

[1] Plaintiff has withdrawn his claim against the Commonwealth and the DMV. *See* Docket No. 35, at 25 ("Plaintiff concedes that the Commonwealth and DMV should be dismissed as to [his due process claim], as they cannot be properly included in this § 1983 claim.").

Ballou's report and recommendation in full on June 21, 2016, and on June 22, 2016, Supinger filed an amended complaint.

Supinger has now filed a motion for partial summary judgment on his procedural due process claim.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## III. FACTS

Supinger was an Assistant Special Agent in Charge in DMV's Lynchburg, Virginia, office. As a result of a conflict between Supinger and DMV, which is described more fully in

- 2 -

Case 6:15-cv-00017-NKM-RSB   Document 140   Filed 07/20/16   Page 2 of 13   Pageid#: 1662

*Supinger v. Virginia*, __F. Supp. 3d__, 2016 WL 865332 (W.D. Va. March 2, 2016), Supinger was suspended on February 28, 2012. Pl.'s Ex. 2, at 2.

As a non-probationary law enforcement officer, Supinger had two means of grieving his suspension. Supinger could proceed under the Commonwealth of Virginia's Grievance Procedure, Va. Code § 2.2-3000, *et seq.* (hereinafter, "VGP"), a process managed by the Office of Employment Dispute Resolution ("EDR"). Alternatively, Supinger could proceed under Va. Code § 9.1-500, *et seq.*, known as the Law-Enforcement Officers Procedural Guarantee Act ("LEOPGA").[2]

On March 29, 2013, Supinger elected to grieve his suspension under the VGP. In order to grieve his suspension under the VGP, Supinger was required to "initiate [his] grievance on a fully completed 'Grievance Form A.'" Office of Emp't Dispute Resolution Grievance Procedure Manual, at § 2.4 (hereinafter, "GP Manual").[3] Supinger duly submitted a Grievance From A regarding his suspension from employment. Pl.'s Ex. 3.

Thereafter, on April 9, 2013, Hill issued to Supinger five Written Notices of Discipline and terminated his employment with DMV. Pl.'s Exs. 5. Two of Supinger's fellow employees, David Stultz and Anastasia Wootten, were also terminated. The Virginia Attorney General appointed Karen Michael as special counsel to represent DMV in Supinger, Wootten, and Stultz's administrative proceedings.

---

[2] The details of these two processes are explained more fully at Part V.A.

[3] In order to grieve a *termination* grievance under the VGP, the GP Manual requires that an employee "initiate[] [the grievance] directly with EDR by submit[ing] a fully completed Grievance Form A – *Dismissal Grievance*." GP Manual § 2.5 (emphasis added). Thus, the GP Manual requires grievants to complete a special form to grieve a termination grievance. While Supinger did submit an ordinary Grievance Form A relating to his suspension, the parties agree that he never submitted a Grievance Form A – Dismissal Grievance relating to his termination.

- 3 -

On April 17, 2013, Supinger, Wootten, and Stultz petitioned the Richmond City Circuit Court to enjoin Michael's appointment as special counsel. The Commonwealth demurred and moved to dismiss the petition.

On April 26, 2013, Michael contacted Christopher Grab, the Director of EDR, and sought on DMV's behalf "an immediate Order by EDR to stay all proceedings as it relates to any current, pending and/or future grievances that may be filed by Grievant." Pl.'s Ex. 7, at 2. Michael requested that the stay remain in place until the lawsuit seeking to remove Michael as special counsel was resolved.

Grab responded to Michael's request on May 3, 2013. Grab wrote that "[EDR] considers the filing timeframe for dismissal grievances in these matters tolled during the pendency of the Richmond City Circuit Court action." Pl.'s Ex. 8, at 2.

On June 18, 2013, the Richmond City Circuit Court held a hearing on the grievant's petition. At the hearing, the court ordered orally that Supinger's termination grievance be stayed, *see* Pl.'s Ex. 9, at 6, and the court entered a written order memorializing the stay on June 27, 2013. *See* Pl.'s Ex. 10, at 3 ("The Court Orders that only those matters related to the termination grievance now be stayed pending this Court's ruling on the Petition [to remove Michael as special counsel].").

On October 21, 2013, the Richmond City Circuit Court dismissed Supinger's petition with prejudice, effectively dissolving the stay of any action regarding a termination grievance. On October 25, 2013—four days after the stay was lifted—Supinger filed a termination grievance under LEOPGA. *See* Pl.'s Ex. 12, at 2 ("Robert E. Lee Supinger, Jr. . . . files his grievance pursuant to Virginia Code § 9.1 – 500 *et seq.*, the Law Enforcement Officers Procedural Guarantee Act . . . .").

- 4 -

On October 29, 2013, Michael denied Supinger's request, stating that DMV had "determined that Mr. Supinger may not proceed as requested." Pl.'s Ex. 13, at 2. DMV refused to grant Supinger a hearing under LEOPGA, in part, because it believed Supinger had "already elected to proceed under the Commonwealth's Grievance Procedure . . . ." *Id.* "DMV's letter, however, ignored the fact that Plaintiff's March 2[9], 2013 grievance from electing the VGP related to [his] *suspension*, not termination." (emphasis in original). *Wootten v. Virginia*, 2016 WL 81504, at *5 (W.D. Va. Jan. 7, 2016).

On November 4, 2013, Supinger again requested a hearing under LEOPGA. Supinger emphasized that his request was not unreasonably late, because it occurred just four days after the Richmond City Circuit Court lifted the stay on termination grievance proceedings. Michael replied on November 11, 2013, and stated that DMV was unaware of the Richmond City Circuit Court and order staying Supinger's possible grievances and that, in any event, "Supinger, by his actions and representations, including those taken and made by counsel, has clearly indicated his intention to proceed under the State Grievance Procedure." Pl.'s Ex. 17, at 2. Michael's letter again disregarded the fact that Supinger never submitted a Grievance Form A – Dismissal Grievance.

Supinger once again asserted his right to proceed under LEOPGA on November 14, 2013. Michael denied the request the next day on November 15, 2013. Michael argued that the circuit court's stay was not binding on DMV, as the agency was not a party to the April 17, 2013, petition. Michael ended the letter by stating that "[t]he Agency will not be responding further to any additional requests on this same issue." Pl.'s Ex. 19, at 2.

That same day, Michael wrote Grab a letter and requested that "EDR immediately lift the stay on all dismissal grievances, and order that the Grievants are permitted that amount of time to

file their dismissal grievances that they had as of the date that the stay was first implemented." Defs.' Ex. L, at 1. Grab responded on November 19, 2013, and informed the parties that the stay of the dismissal grievances would remain in place through the pendency of the grievants' appeal from the Richmond City Circuit Court decision.[4]

The Virginia Supreme Court ultimately denied Supinger's appeal from the Richmond Circuit Court ruling, and on May 2, 2013, Michael requested that EDR lift the stay on the filing of Supinger's dismissal grievance.

Supinger responded on May 5, 2014, and reiterated that "on October 25, 2013, [Supinger] filed and elected to pursue his termination grievance pursuant to [LEOPGA]. Accordingly, [EDR] does not have jurisdiction in this matter." Pl.'s Ex. 26, at 2. Grab issued a letter the following day, and acknowledged that Supinger had elected to use the LEOPGA to grieve his termination. "As such, Ms. Michael's request regarding the stay of proceedings is moot because the grievant is not pursuing and *is no longer able to pursue* a dismissal grievance under [VGP]." Pl.'s Ex. 27, at 2 (emphasis added). Accordingly, Grab wrote that "[t]his would appear to conclude EDR's involvement in this matter." *Id.*

### IV. ANALYSIS

Plaintiff sues Holcomb, Hill, Thorpe, and Penny for violating the Due Process Clause of the Fourteenth Amendment. Defendants admit that "Supinger was vested with a constitutionally protected property interest in continued employment." Docket No. 127, at 12 (internal quotation marks omitted). Moreover, all parties agree that "all the process that is due [Supinger] is

---

[4] Grab also wrote, somewhat in contradiction to the stay, that "[i]f the grievants nevertheless would like to proceed with their dismissal grievances, they are free to file them now . . . ." Defs.' Ex. M, at 1. Although Supinger copied Grab on his October 25 LEOPGA election letter, Grab's November 19th letter made no reference to that election. Indeed, there is no indication that Grab was even aware of Supinger's October 25th election. What is clear is that when Grab was explicitly and directly referred to Supinger's October 25 election, Grab concluded that Supinger would, by virtue of his LEOPGA election, "no longer [be] able to pursue a dismissal grievance under [VGP]." Pl.'s Ex. 27, at 2.

- 6 -

provided by a pretermination opportunity to respond [which he received], coupled with post-termination administrative procedures as provided by . . . statute." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985). The parties are in accordance that processes provided by VGP and LEOPGA each satisfy this requirement. Defendants admit that Supinger did not receive process under either the VGP or LEOPGA. They also admit that they repeatedly denied Supinger's request to proceed under LEOPGA.

Ultimately, then, Supinger's due process claim boils down to one primary issue: did Defendants' repeated refusal to give any post-termination process to a state employee violate due process?

A. THE VGP AND LEOPGA

To understand the issue, "a review of Virginia's grievance procedures is necessary." *Wootten*, 2016 WL 81504, at *6. Virginia law affords a non-probationary law enforcement officer two forms of post-termination process. One is the VGP, Va. Code § 2.2-3000 *et seq.* The VGP provides that "all nonprobationary state employees shall be covered by the grievance procedure established pursuant to this chapter . . . ." Va. Code § 2.2-3001(A). If a party chooses to grieve their dismissal under the VGP, the grievance "proceed[s] directly to a formal hearing." *Id.* at § 2.2-3003(A). Crucially, the VGP shall not apply to "[l]aw-enforcement officers . . . whose grievances are subject to [LEOPGA] and who have elected to resolve such grievances under those provisions . . . ." *Id.* § 2.2-3002.

The second scheme is LEOPGA, Va. Code § 9.1-500 *et seq.* LEOPGA provides that an officer "may, within a reasonable amount of time . . . request a hearing" to grieve his termination. *Id.* At the hearing, the officer may "present evidence, examine and cross-examine witnesses." Va. Code § 9.1-504(A). In accordance with Section 2.2-3002(3) of the VGP,

LEOPGA provides that a grievant "may proceed under either [VGP] or [LEOPGA], but not both." Va. Code § 9.1-502(B).

As this Court made clear in *Wootten*, "whether Defendants violated state law in their handling of Plaintiff's termination grievance is not itself the *sine qua non* of Plaintiff's Due Process claim." *Wootten*, 2016 WL 81504, at *7. "[A] state does not necessarily violate the Constitution every time it violates one of its rules," *Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990), and "the mere fact that a state agency violates its own procedures does not *ipso facto* mean that it has contravened federal due process requirements." *Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1285 (4th Cir. 1995).

"[A]s *Riccio* and *Garraghty* themselves clearly allow, violations of state law can transgress the Due Process Clause where their end result is constitutionally deficient process." *Wootten*, 2016 WL 81504, at *7. That happened here. Supinger clearly and unequivocally elected to proceed under LEOPGA. As the Court will discuss, *infra*, Supinger's election to proceed under LEOPGA foreclosed, as a matter of law, his ability to proceed under the VGP. Accordingly, because Defendants refused to allow Supinger to proceed under LEOPGA, they "refused to provide Plaintiff with the only process available to [him]." *Id.*

B. SUPINGER ADEQUATELY AVAILED HIMSELF OF POST-TERMINATION REMEDIES

Defendants are correct that, in order "to state a successful claim for failure to provide due process, 'a plaintiff must have taken advantage of the processes that are available to him or her, *unless those processes are unavailable* or patently inadequate.'" *Root v. Cty. of Fairfax*, 371 Fed. App'x 432, 434 (4th Cir. 2010) (emphasis added) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). The undisputed facts show that Supinger repeatedly attempted to take advantage of the processes that were available to him.

It is undisputed that Supinger wrote to the DMV on October 25, 2013, November 4, 2013, and November 14, 2013, and demanded to proceed under LEOPGA. Defendants concede that they denied all of Plaintiff's requests. Defendants argue, however, that they offered to allow Supinger to proceed under the VGP, and because he refused, he did not take advantage of the processes that are available to him.

The VGP and LEOPGA are, however, clear—if a grievant chooses to proceed under one statute, the grievant is then foreclosed from proceeding under the other. *See* Va. Code § 2.2-3002(3) (VGP does not apply to to "[l]aw-enforcement officers . . . whose grievances are subject to [LEOPGA] and who have elected to resolve such grievances under those provisions . . . ."); Va. Code § 9.1-502(B) ("A law-enforcement officer may proceed under either the local governing body's grievance procedure or the law-enforcement officer's procedural guarantees, but not both."); *see also Wootten*, 2016 WL 81504, at *8 (a grievant's "selection of LEOPGA meant the VGP was foreclosed.").

Defendants nevertheless contend that a series of communications by Grab indicate that Supinger still had the opportunity to proceed under VGP after his October 25, 2013, election letter. Defendants point to the fact that Supinger copied Grab on his October 25 election letter. Despite this fact, Grab wrote in a November 19, 2013, letter, that, despite his stay of filing deadlines, if "the grievants nevertheless would like to proceed with their dismissal grievances, they are free to file them now, which I would encourage to hopefully resolve these issues more quickly." Defs.' Ex. M. Defendants argue that this letter makes it "reasonable to infer that Grab was using his statutory authority to circumvent a potential roadblock to give Supinger *more* options for process." Docket No. 127, at 17.

- 9 -

Case 6:15-cv-00017-NKM-RSB   Document 140   Filed 07/20/16   Page 9 of 13   Pageid#: 1669

This argument fails. First, it contradicts the clear, unambiguous language of the VGP and LEOPGA, which provide that an election to proceed under one forecloses the greivant's ability to proceed under the other.

Second, although Defendants cite to Grab's general authority to administer the VGP, *see* Va. Code § 1202.1, none of Defendants' cited authority indicates that Grab has the authority to rewrite or suspend unambiguous provisions of the VGP or LEOPGA.

Third and finally, Defendant's position ignores Grab's May 6, 2014, letter. When Supinger's counsel explicitly and directly informed Grab that he had elected to proceed under LEOPGA on October 25, 2013, Grab acknowledged that Supinger was therefore "no longer able to pursue a dismissal grievance under [VGP]." Pl.'s Ex. 27, at 2. Grab's May 6 letter indicates plainly that he believed an election under LEOPGA prevented Supinger from proceeding under VGP. Defendants fail to explain Grab's apparently inconsistent positions,[5] and, when considered against the clear language of the VGP and LEOPGA, Defendants' contention that the VGP remained open to Supinger is, at best, "merely colorable" as a factual matter, and flatly wrong as a matter of law. *See Anderson*, 477 U.S. at 250.

The undisputed facts are that Plaintiff attempted to grieve his termination under the only process that was, as a matter of law, available to him after he elected to proceed under LEOPGA on October 25. The VGP processes, because of Supinger's election, were "unavailable" to him, and accordingly he did not have to attempt to grieve under that statute. *See Root*, 371 Fed. App'x at 434. Supinger has, accordingly, attempted to "take[] advantage of the processes that are available to [him]." *Id.*

---

[5] The inconsistency is created largely by Defendants' specious claim that Grab's November 19, 2013, letter should be interpreted as an exercise of some unsubstantiated discretionary authority to ignore the clear mandates of the VGP and LEOPGA. The inconsistency dissolves if, as the record shows, Grab, despite being copied on Supinger's October 25 election letter, was simply unaware that he had elected to proceed under LEOPGA until Supinger's counsel directly informed him on May 5, 2014.

C. CAUSATION

Plaintiff concedes that the evidence is in dispute as to "whether Penny had a sufficient role to be held liable for the due process violation." Docket No. 95, at 10. Accordingly, summary judgment will be denied as to Penny. It is undisputed, however, that Holcomb issued the letter denying Supinger due process, and that Thorpe and Hill participated in deciding whether to afford Supinger a LEOPGA hearing. *See, e.g.*, Docket No. 127, Ex. M (Hill: "I [and Thorpe] w[ere] involved in the discussions about [whether to offer Supinger process under LEOPGA.]"). It is therefore undisputed that Holcomb, Thorpe, and Hill showed a "personal connection between . . . [the] denial of [Plaintiff's] constitutional rights . . . ." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Accordingly, there are no undisputed facts as to causation with regard to Holcomb, Thorpe, and Hill.

D. QUALIFIED IMMUNITY

Defendants claim they are entitled to qualified immunity. A defendant is entitled to qualified immunity on money damages for constitutional violations unless the right violated "was 'clearly established' at the time of the challenged conduct." *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 195–96 (4th Cir. 2015). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting the defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Defendants have failed to meet that burden.

The Supreme Court has established that due process requires that a terminated public employee receive a "comprehensive post-termination hearing," even where pretermination process occurred. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). Four Fourth Circuit cases have also held that terminated state employees are entitled to post-deprivation process. *Garraghty*, 52 F.3d at 1283 (citing *Holland v.*

- 11 -

*Rimmer*, 25 F.3d 1251, 1258 (4th Cir. 1994); *Linton v. Frederick County Bd. of County Com'rs*, 964 F.2d 1436, 1441 (4th Cir. 1992); *McClelland v. Massinga*, 786 F.2d 1205, 1213 (4th Cir. 1986)).

Defendants argue they are entitled to qualified immunity because no court has held that electing to proceed under either the VGP or LEOPGA automatically precludes a grievant from proceeding under the other. This argument is unavailing, as the VGP and LEOPGA are unambiguously mutually exclusive. *See Wootten*, 2016 WL 81504, at *7. The law was established that Supinger was entitled to post-termination process. *See* Defs.' Brief, at 12 ("For state employees such as Supinger who have been terminated from employment, all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by Virginia statute.") (quotation marks and alterations omitted). Supinger elected to proceed under LEOPGA, thereby closing his avenue under the VGP. Defendants repeatedly denied his request. "As the Supreme Court has emphasized, officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013) (internal citations and quotations omitted). That Defendants may have misread the plain text of the VGP and LEOPGA does not entitle them to qualified immunity.

## V. CONCLUSION

For the aforementioned reasons, Plaintiff's motion for partial summary judgment will be granted in part and denied in part. An appropriate order will accompany this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __20th__ day of July, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

- 13 -