CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

03/04/2019
JULIA C. DUDLEY, CLERK
BY:     s/ F. COLEMAN
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **ROBERT E. LEE SUPINGER, JR.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 6:15-cv-17** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMONWEALTH OF VIRGINIA, et al.,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendants.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Robert E. Lee Supinger, Jr., ("Supinger") filed this action related to grievances alleged during and after his employment with the Virginia Department of Motor Vehicles ("DMV"). Supinger initially alleged fourteen claims against multiple Defendants associated with the DMV. Supinger sought injunctive relief and reinstatement; $5,000,000 in compensatory damages; $5,000,000 in liquidated/punitive damages; $250,000 in back pay; $1,000,000 in front pay; and pre-judgment interest, costs, and attorneys' fees. Dkt. 23. The district court denied qualified immunity and granted Supinger summary judgment as to the due process claims, but dismissed all other asserted claims. The Fourth Circuit affirmed the district court in an interlocutory appeal and remanded the case for damages. Thereafter, the parties reached a confidential settlement agreement following mediation to resolve all claims. There can be no doubt that this contentious case was hard-fought at every step of the litigation. Ultimately, Supinger secured a substantial settlement and is the prevailing party, thus entitling him to attorneys' fees under 42 U.S.C. § 1988.

Case 6:15-cv-00017-NKM-RSB   Document 236   Filed 03/04/19   Page 1 of 28   Pageid#: 4359

The district court has referred to me Supinger's motions for attorneys' fees and costs. Dkts. 211, 213. Supinger now seeks $806,882.50 in attorney's fees and $3,415.51 in costs, plus interest at the judgment rate. Dkt. 212. Supinger seeks additional attorney's fees in the amount of $37,740.00 incurred from additional work since filing his original motion, for a total claim of attorneys' fees of $844,622.50.[1] Dkt. 223. Specifically, the petition includes fees from both Supinger's original counsel and the attorneys who prosecuted the case when the original counsel developed a conflict and had to withdraw.

| Attorney | Hours Billed | Additional Hours Billed for Fee Petition | Rate | Total Fees Sought |
|---|---|---|---|---|
| Terry N. Grimes | 1596.7 | 78.1 | $400.00 | $669,920.00 |
| Brittany M. Haddox | 377.8 | 11.3 | $250.00 | $97,275.00 |
| Paralegal Services | 73.9 | 0 | $125.00 | $9,237.50 |
| | | | | |
| Melvin E. Williams | 83.4 | 10.5 | $350.00 | $32,865.00 |
| Micah D. Wright | 59.5 | 0 | $225.00 | $13,387.50 |
| Paralegal Services | 9.4 | 0 | $125.00 | $1,175.00 |
| | | | | |
| Andrew D. Meyer | 83.05 | 0 | $250.00 | $20,762.50 |
| | | | TOTAL: | $844,622.50 |

Defendants DMV, Richard Holcomb, Joseph Hill, and Jeannie Thorpe (collectively, "Defendants") partially oppose the motion for attorneys' fees and expenses and request that the Court substantially reduce any award. Dkt. 221. Having considered the record, legal arguments submitted, and applicable law, I recommend that the District Court **GRANT** Supinger's Motion for Attorneys' Fees (Dkt. 211), and Motion for Bill of Costs (Dkt. 213), and award $488,962.60 in attorneys' fees and $2,704.90 in costs, for a total award of $491,667.50.

I.     <u>Factual and Procedural Background[2]</u>

Plaintiff Robert E. Lee Supinger, Jr., was a former Assistant Special Agent in Charge at the Virginia Department of Motor Vehicles ("DMV") Lynchburg office. Supinger was unhappy

---

[1] Supinger's reply brief incorrectly states the total as $844,532.50. Dkt. 223, at 25.

[2] The facts of this case, particularly as applied to Supinger's procedural due process claim, are fully set forth in the District Court's Memorandum Opinion dated July 20, 2016. Dkt. 140.

with several aspects of his workplace at the DMV, which he raised with his direct supervisors and the DMV administration. He was suspended on February 28, 2012, and terminated on April 9, 2013. Supinger filed this action on July 8, 2015, asserting fourteen claims against various defendants related to his employment with the DMV and subsequent termination, most of which the District Court dismissed for failure to state a claim or granted summary judgment for Defendants.[3] Relevant here is Supinger's claim under 42 U.S.C. § 1983 that Defendants denied him procedural due process related to his efforts to grieve the termination of his employment in violation of the Fifth and Fourteenth Amendments against four named Defendants.[4] The District Court granted summary judgment in favor of Supinger on July 20, 2016, on his procedural due process claim, finding that Supinger's due process rights were violated in connection with his termination and the subsequent grievance process. Dkt. 141. Defendants filed an interlocutory appeal, arguing that they were entitled to qualified immunity. Dkt. 150. The Fourth Circuit affirmed the judgment and remanded this action to the District Court on the question of damages. Dkt. 198. The parties thereafter resolved the damages question in mediation. Dkt. 212, 1–2. Supinger's motions for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Federal Rule

---

[3] Claims included: Count I – Title VII national origin and racial discrimination; Count II – Title VII gender discrimination; Count III – Title VII retaliation; Count IV – First Amendment retaliation; Count V – procedural due process violations; Count VI – supervisory liability; Count VII - racial discrimination under 42 U.S.C. §§ 1981 and 1983; Count VIII – violation of Government Collection and Dissemination Practices Act; Count IX – violation of Driver's Privacy Protection Act; Count X – violation of Virginia Whistleblower Protection Act; Counts XI, XII, XIII – various state law claims; Count XIV – tortious interference with employment contract expectancy. Dkt. 23. The District Court granted Defendants' motion to dismiss Counts II, IV, VIII, IX, X, XI, XIII, XIV, and Supinger withdrew Count XII. Dkt. 82. The District Court granted summary judgment on all remaining counts, including Counts I, II, III, V (in part), and VI. Dkt. 197.

[4] The particular Defendants for this claim originally included DMV, Richard Holcomb, Joseph Hill, and Jeannie Thorpe. Dkt. 23. The parties consented to dismissal of the due process claim against Tom Penny, as he was not involved in the procedural due process violation. Dkt. 196, at 2.

3

of Civil Procedure 54(d) followed. Dkts. 211, 213. Supinger retained two sets of counsel in this case, and the fee petition accounts for all attorneys that were involved.[5]

## II.  **Analysis**

"In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title," section 1988 permits "the court, in its discretion, [to] allow the prevailing party . . . reasonable attorneys' fee[s] as part of the costs." 42 U.S.C. § 1988(b). The plaintiff bears the burden of demonstrating that the amount of fees sought is reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The parties agree here that Supinger is the prevailing party for purposes of an award of attorneys' fees and costs. See Dkt. 224.

### A.  **Lodestar Calculation**

The Fourth Circuit follows a three-step process to determine a reasonable attorneys' fee award. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. Id. Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009).[6] A strong presumption exists that a properly

---

[5] Terry Grimes and Brittany Haddox began work on this case in January 2016, as Mel Williams and Andrew Meyer withdrew from their representation because of a conflict of interest. Dkts. 68, 72, 73.

[6] The Fourth Circuit has construed the Johnson factors as: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Robinson, 560 F.3d at 243–44.

4

calculated lodestar figure is reasonable. <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 554 (2010). That presumption may be overcome only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. <u>Id.</u> Second, the court subtracts fees for hours spent on unsuccessful claims related to successful claims. <u>McAfee</u>, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount to the plaintiff, depending on the degree of success of the prevailing party's claims. <u>Id.</u>

### i. Hourly Rates

Supinger seeks rates of $400.00 per hour for attorney Terry Grimes and $250.00 per hour for attorney Brittany Haddox.[7] Dkt. 212, at 18. The hourly rate included in an attorneys' fees request must be reasonable, which is generally determined by the prevailing market rates in the relevant legal community for the type of work for which an award is sought. <u>McAfee</u>, 738 F.3d at 91. The relevant community is usually that in which the district court sits. <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 179 (4th Cir. 1994). Determining the prevailing rate in the relevant community "may be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." <u>Freeman v. Potter</u>, No. 7:04cv00276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1402 (4th Cir. 1987)).

This case was filed in the Lynchburg Division of the Western District of Virginia. Supinger states that "[f]ew employment discrimination cases are successfully prosecuted in the [W]estern [D]istrict of Virginia." Dkt. 212, at 5. Because Supinger agrees that he prosecuted this

---

[7] Defendants do not contest the hourly rates for paralegals ($125.00), Melvin E. Williams ($350.00), Micah D. Wright ($225.00), or Andrew D. Meyer ($250.00). Dkt. 212, at 18.

case in the Western District of Virginia, I find the relevant market is Central and Southwest Virginia.

Supinger supports his attorneys' rates by focusing on three <u>Johnson</u> factors: the skill required by his attorneys, the difficulty of the questions raised in this litigation, and (to some extent) the results obtained. In addition to claiming that few employment discrimination cases are successful in this District, Supinger further claims that an award of summary judgment, affirmed by the Fourth Circuit, is "extremely rare," and that the law in the area of employment law is so fluid that it changes daily and requires attorneys to constantly research appellate decisions. Dkt. 212, at 5. Supinger, however, fails to include any evidence for those contentions. I do not find that this area of the law is so complicated as to require a premium on the prevailing market rate simply because it is rapidly changing. Skilled attorneys must routinely keep themselves apprised of changes in their areas of practice as part of their ongoing duties to their clients and the courts.

Supinger includes a number of affidavits from other employment law attorneys who are familiar with Mr. Grimes and Ms. Haddox. Those attorneys confirm the rates for Mr. Grimes and Ms. Haddox in this case. <u>See</u> Dkt. 212, Ex. 2. Recent fee awards in similar cases are helpful in shedding additional light on the rates. Mr. Grimes and Ms. Haddox were counsel for a plaintiff in a recent Title VII civil rights case, in which Judge Conrad found that rates of $350.00 and $225.00 for Mr. Grimes and Ms. Haddox, respectively, to be reasonable after considering their backgrounds and similar affidavits. <u>Brown v. Mountain View Cutters, LLC</u>, 222 F. Supp. 3d 504, 513 (W.D. Va. 2016). Additionally, in a companion case to Supinger's arising from (at least partially) the same set of facts, Mr. Grimes submitting an affidavit in which he endorsed a fee of $350.00 for lead counsel and $225.00 for counsel's associate as reasonable for employment

6

lawyers practicing in the Western District of Virginia. See Pl.'s Brief/Memorandum in Support

of Motion for Attorney Fees and Costs, Wooten v. Commonwealth of Virginia, 6:14-cv-13

(W.D. Va. Jan. 13, 2017), Dkt. 243-1, at 14–18.

After reviewing fee awards in similar cases, and taking into account employment practice

in the relevant legal market, I find that an hourly rate of $350.00 for Mr. Grimes and $225.00 for

Ms. Haddox is reasonable for their work performed in this case.[8]

### ii. Reasonable Hours

Defendants argue that Supingers's attorneys' fee application should be drastically

reduced due to excessiveness, vagueness in time entries, block billing, and duplication of efforts.

### 1. Excessiveness, Vagueness, and Block Billing

Defendants contend that Supinger's counsel spent excessive amounts of time preparing

for matters in which they had limited roles or that did not require extensive preparation;

submitted many vague time entries such that it is not possible to determine if the time spent on

various tasks is reasonable; and inappropriately lumped multiple tasks into single, undivided

amounts of time. As a result, Defendants contend that the Court cannot assess whether the

attorneys spent an appropriate amount of time on the case and thus whether the fee request is

reasonable. Supinger argues that time is compensable as long as billing statements meet the basic

requirement of listing the hours and identifying the general subject matter of time expenditures.

Dkt. 223, at 13. He also contends that none of the entries are vague or inaccurate, and revealing

any more detail in the entries would reveal information protected by attorney-client privilege. Id.

at 16. In light of these arguments and the materials before me, I recommend an overall 15%

reduction for a combination of excessive billing, vague time entries, and block billing.

---

[8] Notably, the reduction in rates more accurately matches the rates of original counsel in this case: Melvin Williams ($350.00), Andrew Meyer ($250.00), and Micah Wright ($225.00). Dkt. 212, at 18.

7

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Courts have found that "[l]umping and other types of inadequate documentation are a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012). Courts reduce the fee award in such circumstances by either identifying specific hours that are not sufficiently documented or by reducing the overall fee award by a fixed percentage based on the trial court's familiarity with the case, its complexity, and the counsel involved. Id. at 716.

There can be no doubt that this case required significant time and labor, but the records supporting Supinger's fee petition do not justify an award for the full amount he requests. First, Supinger has provided billing records that are replete with entries that appear excessive on their face because of the vagueness of the entries. For example, Ms. Haddox spent 4.4 hours "[r]eviewing filings on ECF system" (Dkt. 212-1, at 7), and 3.1 hours "[r]eading defendants' appeal opening brief" (id. at 24). Mr. Grimes also submitted entries that included, for example: 6.9 hours to "[b]egin review of Supinger file from opposing counsel" (id. at 9); 4.5 hours to "[r]eview brief filed by counsel for Wootten" (id. at 21); 8.5 hours to "review deposition exhibits" (id. at 26); and 6.3 hours for "[e]mails to and from counsel" (id. at 28). A more stark example is the collection of twenty-three entries spanning three pages for a total of 144.6 hours that Mr. Grimes billed for "review" of discovery documents, transcripts, or briefs. Id. at 32–34.

Additionally, Mr. Grimes billed 34.9 hours to draft Supinger's attorneys' fee petition.[9] Id. at 38–39. Without more detailed descriptions, it is not possible to determine whether the time spent on those and similar tasks is appropriate. Finally, for Richard Holcomb's deposition, Supinger seeks compensation for 22.7 hours of preparation (Dkt. 212-1, at 12, 17), but only 3.2 hours for the actual deposition (id. at 17). These entries give no insight as to the particular tasks performed beyond reviewing, drafting, or preparing, or the specific reasons for such time spent on these items. The apparent excessiveness in the time entries weighs in favor of reducing the amount of fees awarded.

Vague descriptions plague Supinger's billing records. "[T]he use of excessively vague time descriptions is a generally disfavored billing practice. Such descriptions 'inhibit the court's reasonableness view' and also 'justify a percentage reduction in the fee award.'" Brown, 222 F. Supp. 3d at 514 (citing Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., No. 2:05–2782, 2015 WL 4469765, at *10 (D.S.C. July 21, 2015) (citing Local 32B-32J, Service Employees Intern. Union, AFL-CIO v. Port Authority of New York and New Jersey, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing award by 20% for vague time entries, such as "preparation for trial" and "research and draft papers"))); accord Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994) ("We have frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when we review an award in a case where the plaintiff has not prevailed on all the claims.").

The billing entries are replete with vague descriptions. For example, Mr. Grimes entered 1.3 hours for "legal research" (Dkt. 212-1, at 9), and 5.7 hours to "digest transcripts" (id. at 18). More problematic is Mr. Grimes's constant use of "prepare for deposition," "work on

---

[9] In his reply to Defendants' motion, Mr. Grimes and Ms. Haddox also claim an additional 89.4 hours for work done on the reply brief. Dkts. 223, at 25; 223-3, at 6.

transcripts," "work on appeal," "prepare for trial," "legal research," "work on discovery," and "work on appellate brief." <u>Id.</u> at 3, 5–6, 8–27, 32. Ms. Haddox, although not nearly as consistently as Mr. Grimes, also submitted vague time entries, including "preparation for depositions." <u>Id.</u> at 16. While these sorts of entries may suffice for short-lived cases, this litigation has continued for years and amassed 235 docket entries. Furthermore, failing to specifically describe the tasks the attorneys performed requires this Court to "labor to dissect" the individual entries to see how they match up with the various claims and phases of litigation. The Fourth Circuit in <u>Rum Creek</u> recognized this problem and implored attorneys to carefully record their time, particularly in this type of case in which Supinger prevailed on only one of his original fourteen claims. Considering all of the above, I recommend that the regular vagueness of time entries in the billing records warrants a further reduction in the amount of fees awarded.

Finally, Defendants argue that Supinger's counsel engaged in "block billing," or the practice of lumping multiple tasks into the same billing entry. Courts in the Fourth Circuit have routinely held that block billing does not provide the court with a sufficient breakdown to support an attorneys' fee request. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." <u>Guidry v. Clare</u>, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." <u>Id.</u> at 294.

There are multiple block billing entries in Supinger's billing records. Mr. Grimes frequently combined multiple tasks into one billing entry. For example, Mr. Grimes billed 7.3 hours to "[p]repare for depositions of Elizabeth Jensen, John Dawson, Thomas Dash and Ronna

Howard" (Dkt. 212-1, at 16); 3.9 hours to "[r]eview VRS member benefits profile, 2010 W-2 and earnings summary, 2011 W-2 and earnings summary, 2012 tax return, and work on damages calculations" (id. at 23); 6.2 hours to "[r]eview DMV's opposition to consolidation in Wootten case and work on reply memorandum and email to counsel concerning consolidation" (id. at 32); and 5.3 hours to "[r]eview order from Judge Moon in Stultz and research concerning question posed by the Court and conf[e]rence with counsel to discuss these matters" (id. at 36). While not nearly as frequently as Mr. Grimes, Ms. Haddox occasionally lumped together her billing entries. For example, she submitted one entry for 2.7 hours for "oral argument of summary judgment motions in Stultz in preparation for our upcoming motions and hearings and reviewing letter filed by defendants concerning upcoming hearing with Judge Ballou concerning discovery concerns" (id. at 20), and another for 7.5 hours for "[r]esearch and work on drafting memorandum in opposition to defendants' motion for summary judgment" (id. at 29). Accordingly, I recommend an additional reduction in the fees awarded.

In light of Supinger's attorneys' excessive and vague time entries and occasional block billing, I recommend a 15% reduction of hours sought by Mr. Grimes and Ms. Haddox in this case.

### 2. Duplication of Efforts

Defendants also contend that Supinger seeks fees for tasks in which his counsel unnecessarily duplicated efforts or prepared for tasks in which they did not participate. When reviewing the hours expended, the Court must focus on the reasonableness of the division of responsibility between counsel. Reduction of hours is warranted only if counsel unreasonably duplicate each other's work. See Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 714 (E.D. Va. 2012). "[T]here is nothing inherently unreasonable about a client having

11

multiple attorneys." <u>McAfee v. Boczar</u>, 906 F. Supp. 2d 484, 501 (E.D. Va. 2012), <u>vacated and remanded on different grounds</u>, 738 F.3d 81 (4th Cir. 2013), <u>as amended</u> (Jan. 23, 2014) (quoting <u>Norman v. Housing Auth. of Montgomery</u>, 836 F.2d 1292, 1302 (11th Cir. 1988)). However, it may be unreasonable for more than one attorney to attend depositions. The Fourth Circuit has noted its sensitivity to "the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney" because "[g]eneralized billing by multiple attorneys on a large case often produces unacceptable duplication." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 180 (4th Cir. 1994).

Defendants argue that Supinger's counsel spent a disproportionate amount of time preparing for proceedings like depositions and hearings without meaningfully participating in those proceedings. Dkt. 221, at 7. In addition to that general argument, Defendants claim specifically that one of Supinger's attorneys cannot bill for preparing for a deposition if another attorney actually attended the deposition. Dkt. 221, at 8.

It is not unreasonable for attorneys working on the same case to divide work for a deposition. For example, Mr. Grimes billed 7.3 hours for preparation for depositions of Elizabeth Jensen, John Dawson, and Thomas Dash, but Ms. Haddox was the one to attend the deposition. Ms. Haddox also recorded her time spent on the dates of these depositions as "preparing for deposition." Dkt 212-1, at 16. However, having multiple attorneys attend hearings or depositions when only one is warranted by the proceeding tends to be duplicative. For example, Mr. Grimes and Ms. Haddox both billed time for attending the depositions of Steve Pike and Michael Bolton (2.5 for Grimes, and 2.5 for Haddox) (Dkt. 212-1, at 17), yet it appears unreasonable to have both attorneys present at two depositions that, combined, lasted no more than two and a half hours. As another example, Ms. Haddox submitted time entries for traveling to and attending the

12

oral argument before the Fourth Circuit on October 25, 2017, but Ms. Haddox did not assist in the argument.[10] Dkt. 221, at 9; 212-1, at 36. Additionally, the amount of hours spent on briefing by both Mr. Grimes and Ms. Haddox is evidence that Supinger's attorneys did not handle the case efficiently. For example, both attorneys amassed 115 hours working on the same motion and memorandum in opposition to defendants' motions for summary judgment. Dkt. 212-1, at 29–30. Both also worked on a "reply brief" for at least 58 hours combined (which seems duplicative in light of the vague entries that do not describe each attorney's specific work on that task). See id. at 31.

Furthermore, while Defendants did not raise this issue, I recognize that Supinger retained Mr. Grimes and Ms. Haddox after his original counsel, Mel Williams, developed a conflict. Mr. Grimes and Ms. Haddox appropriately billed timed for getting up to speed on the case. For example, Mr. Grimes recorded time for "[reviewing] electronic file on ECF" and "[beginning] review of Supinger file from opposing counsel," while Ms. Haddox similarly recorded time for "[r]eviewing files on ECF system" and "[r]eviewing all expert reports from Stultz case." Dkt. 212-1, at 7–9. Both also recorded time for consulting with counsel in the related cases. Id. Supinger's attorneys should not be faulted for spending the time to familiarize themselves with the case, but Defendants should not be required to pay this additional expense. Under § 1988, it is inappropriate to charge the losing party with the time necessary for replacement counsel to reach the level of familiarity with the case for which original counsel had already been compensated. See Spell v. McDaniel, 852 F.2d 762, 768 (4th Cir. 1988) (refusing to charge losing defendants for time spent by appellate counsel to become familiar with case after appellate counsel replaced trial counsel following trial); Personhuballah v. Alcorn, 239 F. Supp. 3d 929,

---

[10] Supinger argues that Ms. Haddox assisted in the appellate argument by helping to prepare for it, but does not explain why she also needed to attend even though she herself was not arguing. Dkt. 223, at 18–19.

949 (E.D. Va. 2017) (finding new counsel's expenses in getting up to speed on case duplicative after they replaced two attorneys who left on maternity leave) (vacated and remanded on other grounds). Here, I do not fault Mr. Grimes and Ms. Haddox for familiarizing themselves with Supinger's case, but I also recognize that Defendants should not have to compensate Supinger's counsel twice for efforts spent on the case before the representation changed—once for Supinger's original counsel, and then again for Supinger's new counsel. I thus take this consideration into account in analyzing duplication of efforts.

While instances of duplicative billing seem to exist throughout the records, they were not as pervasive as the excessiveness, vagueness, and block billing issues. As such, I recommend only an additional 5% reduction of hours sought by Supinger for Mr. Grimes and Ms. Haddox.

### 3. Clerical Tasks

Finally, Defendants argue that most of the paralegal services provided under both sets of attorneys were for purely clerical tasks and request that the Court exclude such clerical work from the fee award. Dkt. 221, at 19. "[I]n this circuit . . . purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), [and] they should not be compensated for at all." Brown v. Mountain View Cutters, LLC, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (quoting Two Men & A Truck/Int'l, Inc. v. Mover, Inc., 128 F. Supp. 3d 919, 929 (E.D. Va. 2015)); see also Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate"). Examples of clerical tasks include filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls. Two Men & A Truck/Int'l, Inc., 128 F. Supp. 3d at 929–30 (citing cases).

14

Here, the billing records for Tracy Mirzayan, paralegal for Mr. Grimes and Ms. Haddox, are replete with tasks such as reviewing and organizing files, emailing, preparing binders, reviewing dockets, scanning, and printing, among others. Mr. Williams's paralegal downloaded and printed ECF files and sent emails. These types of clerical tasks, billed at the paralegals' hourly rates, justify a further 50% reduction in the paralegals' billable hours. See Brown, 22 F. Supp. 3d at 514–15 (reducing the number of hours billed by the paralegal by twenty percent to account for clerical tasks).

### iii.    Fees for Original Counsel

Supinger initially retained Melvin E. Williams and Andrew D. Meyer to represent him in this matter. Those attorneys withdrew due to a conflict of interest in January 2016, at which point Supinger retained Mr. Grimes and Ms. Haddox. Dkt. 68. Defendants argue that the Court should reduce the fee requests for Mr. Williams and Mr. Meyer because their representation only dealt with issues that do not share the common core of facts with Supinger's successful due process claim. Dkt. 221, at 20. Defendants specifically object to time spent on Supinger's challenge to the removal of this case to federal court. Id.

While Mr. Williams and Mr. Meyer's representation of Supinger was mainly limited to the removal and attempt to remand this matter back to state court and to Defendants' first two motions to dismiss, they should not be penalized for initially carrying out representation and then withdrawing due to a conflict. At the outset of a case, it is difficult to predict what the litigation will entail. It is undeniable that Mr. Williams and Mr. Meyer assisted Supinger in prosecuting his case, including defending against Defendants' motions to dismiss and litigating the proper forum in which to bring the case. Additionally, their billing records are far more detailed and do not suffer from the same deficiencies that plague Mr. Grimes's and Ms. Haddox's. See Dkt. 212-3, at

15

35–52. Thus, I do not find that any reductions are necessary for the hours for Supinger's original counsel.

### iv. Lodestar Calculation

It is important to recognize that billing practices in the private sector may differ from those acceptable in a § 1983 case, as a fee-shifting statute requires transparency and consistency in determining fees to award to a prevailing party. See, e.g., Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006) (reducing lodestar figure because the submitted fee claims were "too inadequately detailed to permit a confident assessment of the reasonableness of the time spent" on the case, specifically referencing lumping and block billing). Accordingly, the lodestar calculation, with the reductions in the rates and hours for Mr. Grimes and Ms. Haddox, and the hours for the paralegals, yields as follows:

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Terry Grimes | 1596.70 − 319.34 (20%) = 1277.36 | $350.00 | $447,076.00 |
| Hours for Fee Petition (TG) | 78.10 − 15.62 (20%) = 62.48 | $350.00 | $21,868.00 |
| Brittany Haddox | 377.8 − 75.56 (20%) = 302.24 | $225.00 | $68,004.00 |
| Hours for Fee Petition (BH) | 11.30 − 2.26 (20%) = 9.04 | $225.00 | $2,034.00 |
| Paralegal | 73.9 − 36.95 (50%) = 36.95 | $125.00 | $4,618.75 |
| Melvin Williams | 83.4 | $350.00 | $29,190.00 |
| Hours for Fee Petition (MW) | 10.5 | $350.00 | $3,675.00 |
| Andrew Meyer | 83.05 | $250.00 | $20,762.50 |
| Micah Wright | 59.5 | $225.00 | $13,387.50 |
| Paralegal | 9.4 − 4.7 (50%) = 4.7 | $125.00 | $587.50 |
| | | **TOTAL:** | **$611,203.25** |

### B. Hours Spent on Unsuccessful Claims

After calculating the lodestar fee, the court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). The question is whether Supinger's claims involved a "common core of facts or . . . related legal theories." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). The Fourth Circuit has repeatedly interpreted related claims

to be those that are "inextricably intertwined" with the successful claim. See Abshire v. Walls, 830 F.2d 1277, 1282 (4th Cir. 1987) (explaining claims based on different legal theories arose from a "common core of facts" because they were "inextricably intertwined" in § 1983 case); see also Goodwin v. Metts, 973 F.2d 378, 382–83 (4th Cir. 1992) (adopting Abshire analysis in § 1988 fee petition case and holding that claims did not arise from a "common core of facts" because they were not "inextricably intertwined"); Reed v. Dep't of Corrections, Va, 2015 WL 2374193, at *3–*4 (W.D. Va. May 18, 2015) (applying "inextricably intertwined" analysis).

Defendants contend that a significant percentage of Supinger's fee request includes time spent on issues unrelated to his procedural due process claim, all of which were unsuccessful. Dkt. 221, at 4. Specifically, Defendants argue that Supinger's First Amendment claim or any claims related to his termination are not inextricably intertwined with his due process claim, thus warranting a reduction in fees awarded. Id. at 13. Supinger contends that, from the time Mr. Grimes and Ms. Haddox took on representation, the primary focus and effort was on prosecution of the due process claim and the related First Amendment claim, albeit to a lesser extent. Dkt. 212, at 14. Supinger argues that Defendants are not entitled to a reduction in fees for related claims because counsel's efforts furthered Supinger's claims and it is permissible to plead different theories around a common core of facts. Id. at 14–15.

The problem Defendants face is that Supinger's due process claim served as the core of his entire case. Defendants claim that "[a]ny work that related to Supinger's employment" or claims related to his termination are not inextricably intertwined with his due process claim and so should not be compensated. Dkt. 221, at 13. The deprivation of due process to Supinger arose

17

out of Defendants' failure to provide a post-termination hearing, as required by LEOPGA.[11] Supinger would not have a procedural due process claim without first being terminated. The due process claim is inextricably intertwined with his termination because without the termination, there is no due process claim.

At the motion to dismiss stage, the District Court dismissed seven of Supinger's original fourteen claims in his Amended Complaint (Dkt. 31); Supinger withdrew one; and the District Court denied Defendants' motion to dismiss for the remaining claims (Dkt. 82). Supinger then amended his complaint to include six claims: Title VII national origin and racial discrimination; Title VII retaliation; violations of right to free speech; violation of procedural due process; supervisory liability; and racial discrimination. Dkt. 133, at 25–32. Four of those claims related to his termination: Count II – retaliation for participation in a Title VII proceeding; Count III – retaliation for protected speech; Count IV – procedural due process violation; and Count V – supervisory liability. Id. at 26–31. Defendants cannot dismiss the claims related to Supinger's termination simply because he did not prevail on them. Had Supinger been afforded a post-termination hearing, he would have been able to air his various grievances relating to his termination in that forum. Moreover, the doctrine established in Carey v. Piphus, 435 U.S. 247 (1978), which suggests that Supinger's damages for violation of his procedural due process rights may have been limited if he was properly terminated, made relevant the facts and circumstances of Supinger's employment and termination.

While I do find that the due process claim served as the core of the entire case, I recognize that Supinger prevailed on only one of his fourteen original claims. The core set of

---

[11] The Law Enforcement Officers Procedural Guarantee Act (LEOPGA), Va. Code §§ 9.1-500, et seq., guarantees law enforcement officers certain procedural rights whenever the officer may be dismissed, demoted, suspended, or transferred for punitive reasons.

facts remains the same when analyzing the due process claim, and thus, how well Supinger fared on his other claims is more effectively analyzed under the degree of success framework below.

### C. Degree of Success of Supinger's Claims

The final step in determining a reasonable fee award is calculating a percentage of the lodestar figure that takes into account the degree of success of a plaintiff's claims. There is a "strong" presumption that the lodestar figure represents a reasonable fee. <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 552 (2010). The strong presumption for the reasonableness of a lodestar fee figure can only rarely be overcome in "extraordinary cases," which will be presented in the "rarest of circumstances." <u>Id.</u> at 560 (addressing enhancement of lodestar fees). However, when a plaintiff achieves only partial or limited success, the lodestar figure may be excessive notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436 (1983). Courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." <u>Id.</u> at 435. When a plaintiff's results have been "excellent," the award should account for "all hours reasonably expended on the litigation," even if some claims prove unsuccessful; alternatively, when a plaintiff "has achieved only partial or limited success," the court should reduce the award to prevent the plaintiff from obtaining "an excessive amount" in comparison to his low measure of success. <u>Id.</u> at 436.

Defendants argue that Supinger's success was modest. He initially sought reinstatement and a total of $11,250,000 in damages (Dkt. 133, at 2), and the settlement agreement obligates Defendants to pay backpay, compensatory damages, and other non-monetary contributions for an overall value of $174,501.00 (Dkt. 221, at 21). As a result, Supinger only recovered 1.55% of the monetary relief he originally demanded, and he was not reinstated. Thus, Defendants argue that

the Court should grant a significant downward departure because the attorneys' fees are disproportionate to the amount actually recovered. Supinger argues that he vindicated his rights in this litigation even in light of Defendants' "scorched earth" defense. Dkt. 212, at 10. In Supinger's view, the measure of success is not limited to the amount of damages awarded, but instead includes "whether civil rights policies are vindicated and whether important social benefits are obtained." Id. at 11. Supinger argues that his success in this case serves as a deterrent to civil rights violations in the future and his "very favorable results" contribute to the "important policy of eradicat[ing] retaliation for exercising protected rights." Id. at 11–12.

Fee awards under § 1988 should not necessarily be proportionate to the amount of damages that a plaintiff actually recovers. City of Riverside v. Rivera, 477 U.S. 561, 574 (1986). The amount of damages a plaintiff recovers is relevant to the amount of fees to be awarded, but it is "only one of many factors a court should consider in calculating an award of attorneys' fees." Id. Ultimately, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

Supinger is correct in observing that courts applying these principles have recognized the importance of plaintiffs vindicating civil rights and being awarded attorneys' fees to reflect that success, even when relief was modest. However, while Supinger did prevail on his procedural due process claim, his rather limited victory warrants a downward departure in his fee award. The types of cases in which the Fourth Circuit has found that district courts abused their discretion in reducing awards for a limited degree of success are those in which a plaintiff, for example, "changed the legal landscape" in a particular area and "opened the courthouse doors" to claims that courts had previously not permitted. See Doe v. Kidd, 656 Fed. Appx. 643, 657–58 (4th Cir. 2016) (finding 63% reduction to be an abuse of discretion in case where plaintiff

changed the legal landscape under the Medicaid Act by opening the door for plaintiffs to enforce

rights under Medicaid Act through § 1983). In a § 1988 setting, "[w]here recovery of private

damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to

give primary consideration to the amount of damages awarded as compared to the amount

sought." McAfee v. Boczar, 738 F.3d 81, 93 (4th Cir. 2013) (quoting Rivera, 477 U.S. at 585

(Powell, J., concurring)).

   Here, it is true that Supinger prevailed on his procedural due process claim, but his

victory did not change the legal landscape of the law, nor did it open the doors of the courts to

previously unavailable avenues. For all of his claims, including those involving civil rights,

Supinger sought private damages and relief, namely, injunctive relief and reinstatement; $5

million in compensatory and $5 million in punitive damages; and back pay and front pay. The

DMV's failure to provide Supinger with a post-termination hearing applied specifically to

Supinger's termination. While he did obtain a victory for civil rights, his success was limited to

him. The ultimate settlement agreement awarded Supinger compensatory damages, backpay, and

employee benefits—all relief personal to him—indicating that his victory was viewed as much

less of a widespread deterrent to future civil rights violations. The Fourth Circuit has noted that

an award of punitive damages, which serve to punish and deter future violations, reveal when

deterrence and vindication are important. Id. at 94 (noting that a jury refusing to award punitive

damages "substantially undermined" the court's reliance on deterrence and vindication).

Supinger did not obtain any sort of punitive relief, indicating that too much of a reliance on

deterrence and vindication would be misplaced.

   Accordingly, the "most critical factor" in determining a reasonable attorneys' fee under

§ 1988 is the extent of plaintiff's success. Hensley, 461 U.S. at 436. Congress intended § 1988 fee awards to be adequate to attract competent counsel, but also wanted to avoid producing windfalls to attorneys. McAfee, 738 F.3d at 92 (citing Rivera, 477 U.S. at 580). In McAfee, the Fourth Circuit held that the district court abused its discretion when it permitted a fee award that was 109 times the jury verdict in a § 1983 case.[12] Id. (noting that the district court's view of plaintiff's success was erroneous, which was "best illustrated by comparing McAfee's lofty expectations with the jury's paltry damages award"). While Supinger is certainly not seeking a fee award that is 100 times his recovery, the fact that he prevailed on only one claim and recovered only 1.55% of his initial demand cannot be ignored.

Other cases in which courts have reduced fee amounts for limited success are more illuminating. The Fourth Circuit held that a district court did not abuse its discretion in reducing a fee award by 45% when the plaintiff achieved limited success in a § 1983 case. Prison Legal News v. Stolle, 681 Fed. Appx. 182, 185–86 (4th Cir. 2017). The district court weighed the fact that both plaintiff and defendants achieved significant success: while defendants avoided paying any monetary award, plaintiff was the prevailing party because he succeeded on his due process claims, had the potential to recover punitive damages, and obtained permanent injunctive relief. Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 405–06 (E.D. Va. 2015). The Fourth Circuit recognized that the district court weighed the plaintiff's tangible and substantial victories while also weighing defendant's success in avoiding any monetary damages. Prison Legal News, 681 Fed. Appx. at 186. In another case concerning consumer protection, the plaintiff obtained only a 4% monetary recovery, but the district court noted that requiring direct proportionality for the attorneys' fees award would discourage enforcement of the consumer protection statutes. Denton

---

[12] Supinger is asking for almost five times the amount of his recovery of roughly $174,501, based on a fee amount of $844,622.50.

v. PennyMac Loan Services, LLC, 252 F. Supp. 3d 504, 530 (E.D. Va. 2017). The court reduced the lodestar amount by 40% to reflect the plaintiff's "tangible victory" in succeeding on the merits while also taking into account the minimal financial award that plaintiff accepted in light of his initial demand. Id. at 530–31. Finally, in a FLSA case, the plaintiffs prevailed under the settlement agreement but obtained only 17% of the initial demand. McNeil v. Faneuil, Inc., Action No. 4:15cv81, 2017 WL 9771834, at *11 (E.D. Va. Nov. 8, 2017). The court ultimately reduced the award by 10% to account for the limited success of plaintiff's claims. Id.

In Supinger's case, reducing his fee award in strict adherence to the proportionality of his recovery would produce an extreme and unfair result. His recovery is just one of many factors to consider. It is unmistakable, however, that Supinger's success on all of his claims was limited. The district court dismissed half of the initial claims shortly after Supinger's present counsel came into the case. The balance of the case likewise was dismissed, except for the due process claim, at the summary judgment stage. Supinger did obtain summary judgment on the due process claim, and prevailed on that issue before the Fourth Circuit. Nevertheless, the complexion of the case and the rights Supinger sought to vindicate were much broader in scope than his ultimate success in challenging the process he received as he attempted to grieve his termination. In light of previous reductions taken, I recommend an additional 20% reduction to the entire award. This further reduction brings the total recommended attorneys fee award to $488,962.60.

III.    **Costs and Expenses**

Under § 1988, a prevailing plaintiff in a civil rights action is entitled to recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell v. McDaniel, 852 F.2d 762, 771

23

(4th Cir. 1988) (quoting <u>Northcross v. Bd. of Educ. of Memphis City Schs.</u>, 611 F.2d 624, 639

(6th Cir. 1979)); <u>see also</u> <u>Daly v. Hill</u>, 790 F.2d 1071, 1083–84 (4th Cir. 1986) (noting that the

district court should review prevailing civil rights plaintiffs' expense requests under § 1988,

which contemplates reimbursement for all reasonable litigation expenses). Supinger seeks

$3,415.51[13] in costs and expenses. Dkt. 213, at 1.

| Taxable Costs | Amount |
|---|---|
| Filing Fee | $400.00 |
| Hart Reporting and Videoconferencing – Anderson Deposition | $1,068.50 |
| Hart Reporting and Videoconferencing – Penny Deposition | $1,457.26 |
| In-House Copies | $467.25 |
| Court Reporter Fee for Motion Hearing (7/12/16) | $22.50 |
| | **TOTAL: $3,415.51** |

Supinger is entitled to recover those reasonable costs and expenses associated with this

case that he can establish with a reasonable degree of specificity. <u>Design and Prod. Inc. v. Am.</u>

<u>Exhibitions, Inc.</u>, No. 1:10-cv-899, 2011 WL 6002598, at *3 (E.D. Va. Nov. 30, 2011). The law

is clear that no litigation costs should be awarded in the absence of adequate documentation.

<u>Trimper v. City of Norfolk, Va</u>, 58 F.3d 68, 77 (4th Cir. 1995) (affirming a district court's

holding that "an unverified 'Chart of Expenses,' with no receipts or bills attached," was

insufficient documentation to award costs).

Defendants argue that the documentation for the in-house copies is not adequate to

determine if the copies were reasonably necessary. Additionally, Defendants believe the costs for

the deposition transcripts of William Anderson and Thomas Penny are excessive because David

Stultz required that the depositions be videotaped, and Supinger has provided no documentation

explaining why videotaping was necessary. Defendants do not object to the filing or court

reporter fees.

---

[13] There is a discrepancy in Supinger's filings regarding the amount of costs he attempts to recover. His Bill of Costs (Dkt. 213) requests $3,415.51, while his Memorandum in Support of his Motion for Award of Attorneys' Fees and Costs (Dkt. 212, at 19) requests $3,536.26. I accept the figure in the Bill of Costs because it includes Supinger's proof for the expenditures.

24

Regarding the copying charges, it is difficult for the Court to determine the reasonableness of Supingers's charges because the monthly invoices do not provide the price per copy. Rather, the invoices simply list the client, user ID, and account limit in addition to the "total impressions."[14] See, e.g., Adkins v. Crown Auto, Inc., 4:04 CV 00042, 2005 WL 2563028, at *5 (W.D. Va. Oct. 11, 2005) (itemized list of copies that included date, the documents copied, the number of copies made per day, and the charge per copy is sufficient documentation to support recovery of copying charges).

This Court has ruled, consistent with prior decisions, that copy charges of ten cents per page is reasonable for purposes of taxation of costs under 28 U.S.C. § 1920. Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12–cv–00052, 2014 WL 3900389, at *6, *17 (W.D. Va. Aug. 11, 2014); McAirlaids, Inc. v. Kimberly-Clark Corp., Civ. Action No. 7:12-cv-578, 2014 WL 495748, at *12 (W.D. Va. Feb. 6, 2014). Supinger did not give the Court a reason to deviate from that finding in this action, nor did he identify whether his copying costs were more than ten cents per page. Supinger also did not provide documentation that reflects actual monetary amounts. Thus, given the Court's prior experience, and applying a copying charge of ten cents per page, I find a total copying charge of $186.90, which would allow for copying 1,869 pages,[15] to be reasonable. I recommend that Supinger's expenses for copies be reduced by $280.35 to a total of $186.90.

Defendants also object to the costs for videotaping two depositions, although the submitted invoices appear to show that Supinger seeks costs only for the deposition transcripts.

---

[14] The invoices provide that "Impressions" refers to the number of sides copied. For example, for a two-page job with two-sided printing, the number of impressions would be two. Dkt. 213-3.

[15] Supinger's records provide that the overall total number of "impressions" is 1,869 (based on four entries of 1,749, 36, 32, and 52). Dkt. 213-3. I assume that the copies were printed single-sided, meaning the total impressions amount would also be 1,869.

25

Dkts. 213-1, 213-2. Videography fees for depositions are available only if "necessarily obtained for use in the case." Cherry v. Champion Intern. Corp., 186 F.3d 442, 449 (quoting 28 U.S.C. § 1920(2)) (internal quotations omitted). The "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Id. (citation omitted). Courts consider videotaped depositions as necessary for use at trial when the witnesses are beyond the court's subpoena power and there is no assurance that the witnesses will attend the trial. Hanwha Azdel, Inc. v. C & D Zodiac, Inc., Civil Action No. 6:12–CV–00023, 2015 WL 1417058, at *5 (W.D. Va. Mar. 27, 2015). If the videotaping costs were not necessarily obtained for use in the case, transcription costs are still recoverable. Cherry, 186 F.3d at 449.

The submitted invoice for the Anderson deposition appears to show that Supinger seeks costs only for that deposition transcript. See Dkt. 213-1. Supinger does not attempt to recover the additional cost associated with videotaping that deposition, and because the copying costs for that transcript seem reasonable,[16] I recommend awarding $1,068.50 for the Anderson deposition. For the Penny deposition, however, the submitted invoice appears to charge for a copy of the deposition video, in addition to copies of the exhibits. See Dkt. 213-2. Supinger has not met his burden, and has not even attempted, to demonstrate why a videotape of the Penny deposition was necessary for use in this case. Thus, I recommend reimbursing for the Penny deposition at the same per page rate of $2.50 as allowed in the Anderson deposition. Supinger was also charged $42.76 as a penalty on that charge for an unpaid balance. Id. I do not find it reasonable to charge Defendants for Plaintiff's failure to pay his balance on time. Accordingly, I recommend awarding $1,027.00 for the Penny deposition, which excludes the video copy and the late

---

[16] The cost per page for the Anderson deposition transcript was $2.50 (based on $842.50 for 337 pages). Dkt. 213-1.

penalty, but includes $847.50 for the deposition transcript, $169.50 for copies of the exhibits, and the shipping cost of $10.00.

I find that certain expenses are reasonable in amount and reasonably incurred and I recommend a total award of $2,704.90 for litigation costs.

## **RECOMMENDED DISPOSITION**

This case and its companion cases were no doubt contentious, requiring extensive discovery and numerous motions. Additionally, Defendants battled Plaintiff at every step of the litigation, which drove up the fees that Supinger incurred. Nonetheless, having reviewed this attorneys' fee petition, I find that the rates charged should be reduced considering the relevant community; that the hours billed included excessive, vague, and duplicative time entries; and that the fees incurred were disproportionate to the results obtained. I thus recommend a fee award of $488,962.60, and a costs award for $2,704.90, for a sum total of $491,667.50.[17]

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation, which must be filed within 14 days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

---

[17] I anticipate an objection from Defendants regarding my not taking into consideration <u>Wootten v. Commonwealth of Virginia</u>, 6:14-cv-13. However, because the merits of that case are currently on appeal to the Fourth Circuit, it would be inappropriate to rely on a fee petition that is currently stayed pending the outcome of the appeal.

Entered:  March 4, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge