CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
04/02/2019
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT E. LEE SUPINGER, JR., <br><br> *Plaintiff,* <br> v. <br><br> COMMONWEALTH OF VIRGINIA, *ET AL.*, <br><br> *Defendants.* | CASE NO. 6:15-cv-00017 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

The Court referred Plaintiff Robert E. Lee Supinger, Jr.'s ("Plaintiff") motions for attorneys' fees and costs to Magistrate Judge Robert Ballou for proposed factual findings and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The matter is now before the Court on Plaintiff's motions for attorney fees and costs, (dkts. 211, 213), the Report and Recommendation of Judge Ballou, (dkt. 236, hereinafter "R&R"), and both parties' objections thereto, (dkts. 240, 241). Judge Ballou recommended that this Court award Plaintiff a fee award of $488,962.60, and a costs award of $2,704.90, for a total of $491,667.50. Plaintiff and Defendants filed a total of eight objections to the R&R, and so the Court will review those portions of the R&R *de novo*. For the reasons set forth below, the Court will overrule Plaintiff's objections, sustain in part and overrule in part Defendants' objections, and adopt the R&R as modified to reflect *Wooten v. Commonwealth*, No. 6:14-cv-13.

I. **Legal Standard**

District courts can award reasonable attorney's fees to prevailing parties in civil rights litigation. 42 U.S.C. § 1988. The amount of the fee must be determined by the facts of each case, and "the fee applicant bears the burden of establishing entitlement to an award and

1

documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (4th Cir. 1983). Fee awards should be "adequate to attract competent counsel, but . . . not produce windfalls to attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). "[T]he proper calculation of an attorney's fee award involves a three step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court must calculate the lodestar figure by multiplying the number of reasonable hours extended by a reasonable rate. *Id*. To determine these variables the Court should apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[1] *Id*. (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Second, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id*. (internal quotations omitted). Finally, the Court should award a percentage of the remaining amount "depending on the degree of success enjoyed by Plaintiff." *Id*. (internal quotations omitted).

When a court refers a matter to a magistrate judge, any objections to the magistrate judge's R&R must be reviewed *de novo*. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see also* 28 U.S.C.A. § 636(b)(1). In addressing the objections, "[t]he district court does not need to provide an elaborate or lengthy explanation, but it must provide a specific rationale that permits meaningful appellate review." *Cruz v. Marshall*, 673 F. App'x 296, 299 (4th Cir. 2016).

---

[1] These factors are as follows:
> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee v. Boczar*, 738 F.3d 81, 88 n. 5 (4th Cir. 2013) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

## II.     Analysis

The parties do not object to the R&R's recitation of the facts or procedural history in this case, and for that reason that portion of the R&R will be incorporated into this opinion. (*See* R&R at 2–4). Briefly, Plaintiff filed suit in 2015, asserting fourteen claims against various defendants. (*Id*. at 3). Most of his claims were dismissed for failure to state a claim or summary judgment was granted for Defendants. (*Id*.). This Court granted summary judgment in favor of Plaintiff regarding his procedural due process claim. (*Id*.). That judgment was affirmed by the Fourth Circuit. (Dkts. 141, 198). The Fourth Circuit remanded the case for a trial on damages, but the parties reached an agreement identifying Plaintiff as the prevailing party and determining damages and equitable relief. (Dkt. 211). The parties further agreed to submit the case to this Court for determination of an appropriate award of attorney's fees and costs. (Dkt. 211).

Plaintiff lodged a total of five objections to the R&R. (Dkt. 241). He states the R&R erred in the following ways: (1) its determinations regarding Plaintiff's billing records, including its concerns about time spent reviewing discovery; (2) its subtraction of time entries because of duplicative efforts; (3) its reduction imposed for unrelated claims; (4) its failure to consider the case's impact on the legal landscape; and (5) its consideration of the terms of the settlement agreement. Defendants also filed objections to the R&R, alleging that it erred in three ways: (1) its analysis of the unrelated claims; (2) its failure to consider *Wooten v. Commonwealth*; and (3) its failure to properly reduce Plaintiff's request for fees and costs associated with preparing his fee petition. The Court will address each objection within the framework provided by *McAfee*. 738 F.3d at 88.[2]

---

[2]     Neither party objects to the hourly rates of $350.00 for Mr. Grimes and $225.00 for Ms. Haddox, the 50% reduction in paralegal fees, or the total costs calculation of $2,704.90. Accordingly, the Court will adopt each of those determinations. (R&R at 16, 24).

### A. Objections Regarding the Lodestar Figure

The first step in calculating fees is determining the lodestar figure. *McAfee*, 738 F.3d at 88. To do so, the Court must consider the factors set forth in *Johnson*. 488 F.2d at 717; *see McAffee*, 738 F.3d at 88 n. 5 (adopting these factors). Although "Defendants do not object to the Report's calculation of the lodestar," (dkt. 240 at 10), Plaintiff's first and second objections are directly related to the R&R's lodestar calculation. Specifically, Plaintiff objects to the R&R's reduction based on "excessiveness, vagueness, and block billing," as well as the "duplication of efforts." (R&R at 7–14). Both of these determinations are relevant to the first *Johnson* factor, the time and labor expended, and resulted in a 20% reduction to the lodestar calculation. (R&R at 16); *see McAfee*, 738 F.3d at 88 n. 5. Undertaking a *de novo* review, the Court considers both of Plaintiff's objections to the lodestar figure in turn.

  **i.**  **Excessiveness, Vagueness, and Block Billing**

"The party requesting a fee bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Project Vote/Voting for America, Inc. v. Long*, 887 F.Supp.2d 704, 709 (E.D. Va. 2012) (citing *Hensley*, 461 U.S. at 437). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*. at 433. "Inadequate documentation includes the practice of grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F.Supp.2d 282, 294 (E.D. Va. 2006). Vague descriptions may also warrant the reduction of an award. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) ("We have frequently exhorted counsel to describe

specifically the tasks performed, a practice which is especially necessary when we review an award in a case where the plaintiff has not prevailed on all the claims.").

The Court does not dispute that this case required significant time and effort by those involved, but the record does not justify the fee award Plaintiff requests. The records provided are replete with vague entries such as "legal research," "review and respond to emails," "prepare for depositions," "work on appeal," "work on discovery," and "review," "digest," or "work" on transcripts. (Dkt. 212-1). In a case such as this, where the litigation spanned years and "the plaintiff has not prevailed on all the claims," such descriptions force the Court to "labor to dissect" each individual entry to determine if the task described could reasonably result in the requested time. *See Rum Creek Coal Sales*, 31 F.3d at 179; *Long*, 887 F.Supp.2d at 717.

Furthermore, the records indicate multiple instances of excessive or block billing, especially given that these entries are often coupled with vague descriptions. For example, Mr. Grimes seeks compensation for 25 hours to "prepare for deposition" of Commissioner Richard Holcomb, not including the 1.3 hours recorded for "client conference" the night preceding the deposition or the 3.2 hours entered for the deposition itself. (Dkt. 212-1 at 17). Without more information and context the Court is left to guess if 25 hours of preparation is appropriate or excessive. A similar problem exists as to Ms. Haddox's entries. She spent 3.1 hours "reading defendants' appeal opening brief," (*id*. at 24), and 4.4 hours "review[ing] filings on ECF system," (dkt. 212-1 at 7). Again, the Court is left to hypothesize whether or not this time is excessive given the descriptions.

There are also multiple instances of block billing in Plaintiff's records. For example, Mr. Grimes billed 7.3 hours to "prepare for depositions of Elizabeth Jensen, John Dawson, Thomas, Dash and Ronna Howard," (dkt. 212-1 at 16), and 6.2 hours to "review DMV's opposition to

5

consolidation in *Wooten* case and work on reply memorandum and email to counsel concerning consolidation." (*Id*. at 32). While Ms. Haddox did not as frequently lump together her billing entries, there are entries such as 7.2 hours billed for "oral argument of summary judgment motions in Stultz in preparation for our upcoming motions and hearings and reviewing letter filed by defendants concerning upcoming hearing with Judge Ballou concerning discovery concerns," (*id*. at 20), and 7.5 hours for "research and work on drafting memorandum in opposition to defendants' motion for summary judgment."

These instances of vague and block billing support a reduction of the requested fees. Plaintiff argues that the reduction was inappropriate "because the opinion overlooks the fundamental fact that defense counsel failed to provide *any* of their time records." (Dkt. 241 at 1) (emphasis in original). To support this proposition, Plaintiff relies on a case from the District of Nevada, which stated that defendant failed to present any evidence for finding the bills were unreasonable, "for example, [defendant] has not supplied the court with any evidence of how many hours were billed by its counsel. . . . [I]n the absence of such evidence, any reductions in plaintiff's counsel's bill would be arbitrary in nature." *Snell v. Reno Hilton Resort*, 930 F.Supp. 1428 (D.Nev. June 17, 1996). But under Fourth Circuit precedent, Plaintiff "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Long*, 887 F.Supp.2d at 709; *Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir. 1988) (noting the fee applicant must prove that hours spent and hourly rates are reasonable). Here, the Court's concern is that the record presented, given the billing practices described above, does not support the fee requested. Plaintiff has offered no evidence or argument to dispute that finding. Therefore, Plaintiff's first objection is found to be meritless and the Court will adopt the R&R's 15% reduction due to these billing practices.

### ii.     Duplication of Efforts

Plaintiff also objects to the R&R's 5% reduction of the lodestar figure due to duplicated efforts. The Court must be "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 179. "Generalized billing by multiple attorneys on a large case often produces unacceptable duplication." *Id*. Additionally, the Fourth Circuit has noted that it is inappropriate for the Court to charge defendants with the time necessary for replacement counsel to become familiar with the case. *See Spell*, 852 F.2d at 768 (holding that, "under § 1988, it is inappropriate to charge defendants with the time necessary for replacement appellate counsel to reach the level of familiarity with the case for which trial counsel had already been compensated"). With these principles in mind, the Court finds that Plaintiff's objection is without merit and the 5% decrease is appropriate.

As discussed above, there are multiple generalized billing descriptions that indicate duplicative work. One example is the 99.2 total hours billed for "work on memorandum in opposition to motion for summary judgment." (Dkt. 212-1 at 29–31). Of these hours, 58.9 were recorded by Mr. Grimes and 40.3 were recorded by Ms. Haddox. It is impossible to tell if this work was necessary or simply duplicative given the vague descriptions provided. Furthermore, both attorneys recorded multiple entries for "work on reply brief," totaling over 50 hours. Again, it is impossible to tell if this seemingly duplicative effort was necessary given the vague descriptions provided.

The Court acknowledges Plaintiff's argument that "a second set of eyes and ears" at certain proceedings "can provide insight that the more senior attorney, busy with actually carrying out the deposition or oral argument, may otherwise miss." (Dkt. 241 at 3) (quoting *Lost*

7

*Tree Vill. Corp. v. United States*, 135 Fed. Cl. 92, 97, 2017 U.S. Claims LEXIS 1434**13 (2017). However, the fee petitioner has the burden of demonstrating that the requested fee is reasonable, and the vague entries on the record here do not provide support for Plaintiff's objection.. *See Hensley*, 461 U.S. at 436.

Additionally, the Court notes that Plaintiff's original counsel has requested and received fees in the instant motion. It is inappropriate for defendant to pay for new counsel to familiarize himself with the case. *See Spell*, 852 F.2d at 768. Thus, the Court must consider the fact that Mr. Grimes and Ms. Haddox were retained after Plaintiff's original counsel developed a conflict. Defendants should not have to compensate Plaintiff's counsel twice for efforts spent on the case due to a change in representation. *See Personhuballah v. Alcorn*, 239 F.Supp.3d 929, 949 (E.D.VA. March 3, 2017) ("Plaintiffs' attorneys are not to be faulted for spending time to get to speed in the case, or for taking maternity leave. Nonetheless, Defendants should not be forced to pay for this additional expense.") (vacated and remanded on other grounds).

These factors, in conjunction with the other factors set forth in *Johnson*, render Plaintiff's objection meritless. Therefore, this section of the R&R and the lodestar figure set forth in the R&R will be adopted in full. (R&R at 16).

### B. Objections Regarding Results Obtained

Once the lodestar figure is calculated, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained. This factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief." *Hensley* 461 U.S. at 434. (noting that "[t]he district court also may consider other factors identified in [*Johnson*] though it should

note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" (internal citations and quotations omitted)).

Plaintiff's third and fourth objections, as well as Defendants' first objection, relate to the R&R's analysis of the "results obtained" inquiry. Specifically, Plaintiff states, "the opinion overlooked the fact that there were no unrelated claims," and "[s]imilarly with respect to the magistrate's comments concerning degree of success and the statement that [Plaintiff's] victory did not change the legal landscape . . . that is simply not true." (Dkt. 241 at 4) (internal quotations omitted). Defendants, on the other hand, argue that the R&R "fail[ed] to consider that evidence relevant to a due process claim does not automatically overlap with evidence relevant to a First Amendment or Title VII retaliation claim" and, for similar reasons, failed by not reducing the fees awarded to Plaintiff's original counsel. (Dkt. 240 at 12, 16).

Where, as here, Plaintiff succeeded on only one claim for relief, two questions must be addressed. *Hensley*, 461 U.S. at 434. First, whether the unsuccessful claims related to the claims on which he succeeded, and, second, whether the plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id*. In cases where the plaintiff's claims for relief "involve a common core of facts" and are "based on related legal theories . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id*. 434–35. Where this is the case, the Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. Accordingly, the Court will first discuss whether the case involved "a common core of facts."

### i. Common Core of Fact

Where claims are based on different legal theories, but arose from facts that "were inextricably intertwined," such that "it is impossible to isolate the inquiry" into the successful claims from the other facts, a common core of facts exists. *Goodwin v. Metts*, 973 F.2d 378, 382 (4th Cir. 1992) (internal quotations omitted). In *Goodwin*, the Fourth Circuit found that where the plaintiff's attorneys "could easily have presented evidence establishing each element of [the plaintiff's successful claims] without developing the facts surrounding the entire sequence of events," there was no common core of facts. *Id*. For slightly different reasons than those presented in the R&R, the Court ultimately reaches the same conclusion and thus will adopt the R&R as modified below.

Plaintiff originally alleged fourteen claims, all of which stemmed from his employment with the DMV and subsequent termination. (R&R at 3). The District Court granted summary judgment in favor of Plaintiff on his procedural due process claim, "finding that [Plaintiff's] due process rights were violated in connection with his termination and the subsequent grievance process." (*Id*.). In evaluating Plaintiff's due process claim, this Court stated that it "boils down to one primary issue: did Defendants' repeated refusal to give any post-termination process to a state employee violate due process?" (Dkt. 140 at 7). While all of Plaintiff's claims arose during his employment with, and ultimate termination by, the DMV, Plaintiff could easily have presented evidence establishing that Defendants' failed to provide him with post-deprivation due process without developing the record as to his other claims.

To show a violation of his due process rights, Plaintiff had to show that he was vested with a constitutionally protected right, and that he was deprived of that right without due process of law. (*Id*. at 6–7). The parties were in agreement that Plaintiff was vested with such a right,

and that the process provided by Virginia's Grievance Procedure, Va. Code § 2.2-3000, *et seq* ("VGP") and Law-Enforcement Officers Procedural Guarantee Act ("LEOPGA") provided the appropriate process. (*Id.*). Accordingly, Plaintiff's success on summary judgment was based on Defendants' failure to abide by the processes provided in those statutes. By contrast, Plaintiff's other claims were tied to the facts surrounding the actions taken by him and Defendants prior to the post-deprivation process or the denial thereof. (*See e.g.* Dkt. 133 at 25 (regarding Plaintiff's Title VII discrimination claim, "[Plaintiff] complained about this discriminatory act but DMV failed to take any action to correct this violation of law. As a result of Defendants' actions [Plaintiff]" experienced adverse action."))

However, the Court cannot ignore the Supreme Court's holding in *Carey v. Piphus*, 435 U.S. 247, 259 (1978), that "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question." In this case, by denying Plaintiff due process, Defendants also failed to provide a hearing at which he could present evidence disputing his termination and airing his grievances. These elements of his claim are "inextricably intertwined" with Plaintiff's other claims and cannot be ignored in light of *Carey*. In *Abshire v. Walls*, 830 F.2d 1277, 1282 (4th Cir. 1987), the Fourth Circuit stated that the plaintiff's attorney "could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events." Similarly, the extent of Plaintiff's injury could not be determined without the development of the facts surrounding his termination. Thus, the Court finds that a common core of fact existed. The Court turns now to "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 434

### ii. Degree of Success

The Court turns now to the degree of success. At the threshold, the Court notes Plaintiff's fifth objection to the R&R, concerning the R&R's consideration of the confidential settlement agreement when analyzing Plaintiff's degree of success. (Dkt. 241 at 5). This objection is without merit. The arguments presented are identical to those in Plaintiff's motion to strike, (dkt. 226). This motion was denied by Judge Ballou, who stated that, in determining attorney fees, "one of the critical factors this Court must consider" is "the amount in controversy and the results obtained." (Dkt. 237 at 2). Accordingly, Judge Ballou reasoned that "by filing his fee petition, [Plaintiff] put his degree of success and, thus, recovery of damages in controversy, and Defendants are entitled to oppose the petition." (Dkt. 237 at 2–3). "Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *McAfee*, 738 F.3d at 93 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring)).

The Court agrees with the reasoning in the order denying Plaintiff's motion to strike, and emphasizes that Plaintiff's award is a necessary element of the determination of the matter at hand. *See Doe v. Kidd*, 656 F. App'x. 643, 657 (4th Cir. 2016) ("[T]he Supreme Court has recognized that the extent of a plaintiff's success is the most critical factor in determining reasonable attorney's fees under § 1988" (internal quotations omitted)). Thus, Plaintiff's fifth objection to the R&R will be overruled.

Where, as here, Plaintiff achieves only partial or limited success, but the claims share a common core of fact, the Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S.

at 434. As noted above, Plaintiff objects to the R&R's "comments concerning degree of success and the statement that [Plaintiff's] victory did not change the legal landscape". (Dkt. 241 at 4).

The damages recovered by plaintiff is "only one of many factors that a court should consider in calculating an award of attorney's fees," and the Supreme Court has explicitly rejected "the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). In the same decision, the Court rejected the "notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs." *Id*. Rather, the Court stated that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id*. But, ultimately, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

Here, Plaintiff initially sought reinstatement and a total of $11,250,000 in damages, but ultimately received back pay, compensatory damages, and other non-monetary contributions for an overall value of $174,501.00. This degree of success warrants departure from the fees requested. Additionally, all of Plaintiff's relief was personal to him and did not "shift the legal landscape" or "open the courthouse doors" to previously barred claims. *Doe v. Kidd*, 656 F. App'x. 643, 657–58. In *Doe*, the Fourth Circuit found a 63% decrease inappropriate where plaintiffs could now "enforce their rights under the Medicaid Act through § 1983." *Id*. Despite Plaintiff's contentions, this case is not comparable. Here, the parties recognize that, had Defendants followed the procedures already in place, *i.e.,* those set forth in VGP and LEOPGA, there would have been no violation of due process. (Dkt. 140 at 7). In *Doe*, the Fourth Circuit explicitly stated that defendants only came into compliance with the Medicaid Act years after

litigation.. 656 F. App'x. at 658.  By contrast, there is no suggestion that any of the Defendants engage in widespread disregard of VGP or LEOPGA.  Additionally, the Court notes that *Wooten v. Commonwealth*, discussed below, determined that Defendants' behavior in this case violated due process.  Thus, Plaintiff's success established nothing new.  (Dkt. 140).

Given the individual nature of the relief, the "most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.  "Application of this principle is particularly important in complex civil rights litigation" where the fact that the plaintiff is the prevailing party "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id*.  Here, a fee award based on the claimed hours would be excessive.  *See also Prison Legal News v. Stolle*, 681 F. App'x. 182, 185–86 (4th Cir. 2017) (upholding a reduction of 45% when the plaintiff achieved limited success in a § 1983 case); *Denton v. PennyMac Loan Services, LLC,* 252 F.Supp. 3d 504, 530 (E.D. Va. 2017) ("[A] 40% reduction in attorney's fees is appropriate in this case to reflect Plaintiff's tangible victory . . . while also taking into account the minimal financial award that Plaintiff accepted in light of his initial settlement demand."); *but see Jones v. Southpeak Interactive Corp.,* 777 F.3d 658, 676 (4th Cir. 2015) (noting that it is "inappropriate to simply compare the total number of issues in the case with those actually prevailed upon" and that "a court should not reduce a fee award simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").  In light of these factors and the reductions taken during the lodestar calculation, the Court will adopt the R&R's recommendation of an additional 20% reduction, resulting in a total recommended attorneys fee award of $488.962.60.

### C. Objection to the Failure to Consider *Wooten v. Commonwealth*

As noted in Defendants' objections, the R&R expressly declined to consider the results in this case's companion case, *Wooten v. Commonwealth*. (Dkt. 240 at 17; R&R at 27, n. 17). The R&R declined to consider the impact of that case because it had been appealed to the Fourth Circuit based on its merits, and thus the fee petition was stayed at that time. (R&R at 27, n. 17). *Wooten* is no longer pending before the Fourth Circuit, and a satisfaction of judgment has been entered. It is unclear what attorney fees and costs were awarded in that case. However, the Court is obliged to consider the similarities between that case and the one at hand, and to adjust the award of fees in this case accordingly. In *Wooten*, the plaintiff was granted relief in the sum of $348,068.15 and the attorneys sought "almost $400,000 in fees and expenses for the work of multiple attorneys over several years." (*See Wooten v. Commonwealth*, No. 6:14-cv-13, Dkts. 267, 278). By contrast, Plaintiff in this case received a sum significantly lower, $174,501.00, (dkt. 221 at 21), but requested a total of $844,622.50 in attorneys' fees. (R&R at 22, 2).

The Court finds that some reduction is warranted in order to account for the vast differences in both ultimate results and fee requests despite the presentation of similar claims. Thus, the Court will impose an additional 10% reduction, resulting in a 30% total reduction in the lodestar figure and a total award of $427,842.27 in attorneys' fees and costs. This amount brings the fees in this case closer to the amount requested in *Wooten,* and imposes a reduction more in line with those imposed in other § 1983 claims with similar levels of ultimate success. *See e.g., Prison Legal News v. Stolle*, 681 F. App'x. at 185–86 (imposing a 45% reduction when the plaintiff achieved limited success in a § 1983 case); *Denton,* 252 F.Supp. 3d at 530 (finding a 40% reduction in attorneys' fees appropriate to account for tangible victory but minimal monetary amount).

### D. Objection to Fees and Costs Associated with Preparation of Fee Petition

The final objection is Defendants' contention that the R&R fails to consider a reduction of the costs associated with Plaintiff's fee petition. (Dkt. 240 at 19). The R&R adjusts Plaintiff's fee request associated with the fee petition by 20% and it does so on the basis of the reasons Defendants put forth in their objections, *i.e.,* block billing as well as vague and/or duplicative entries. (*See* Dkt. 240 at 19–20; R&R at 16). After a review of the record, the Court finds these particular entries no more egregious than the rest of the billing entries, and thus concludes that the reduction imposed is sufficient. Defendants' final objection will therefore be overruled.

The Court notes, as did the R&R, that this case was contentious. The parties battled at every step, as they have continued to do here, resulting in rising fees. However, the Court cannot ignore that Plaintiff was ultimately successful on only a single claim and received a sum significantly less than initially requested. Nor can it overlook the significantly lower fees requested in *Wooten*. Therefore, the Court will adopt the R&R as modified above.

### III. Conclusion

After undertaking a *de novo* review of those portions of the R&R to which the parties objected, the Court concludes that Plaintiff's objections lack merit and thus will be overruled. Defendants' objections regarding the R&R's failure to account for the attorney's fees requested in *Wooten* will be sustained, but their other objections will also be overruled. The Court will award Plaintiff $427,842.27 in attorneys' fees and $2,704.90 in costs, for a total award of $430,547.17.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this  2nd  day of April, 2019.

                                              NORMAN K. MOON
                                              SENIOR UNITED STATES DISTRICT JUDGE